985 So.2d 510 (2008)
Connie Ray ISRAEL, Appellant,
v.
STATE of Florida, Appellee.
Connie Ray Israel, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC05-1739, SC06-653.
Supreme Court of Florida.
March 20, 2008.
Rehearing Denied June 26, 2008.
*512 Bill Jennings, Capital Collateral Regional Counsel, Robert T. Strain and David Robert Gemmer, Assistant CCRC, Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Connie Ray Israel appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the order denying postconviction relief and deny the petition for habeas corpus.

FACTS AND PROCEDURAL HISTORY
Connie Ray Israel was convicted of burglary of a dwelling with a battery, kidnapping, sexual battery with great force, and first-degree murder arising out of the December 27, 1991, murder of 77-year-old Esther Hagans in her home in Putnam County. See Israel v. State, 837 So.2d 381, 384 (Fla.2002). Hagans' body was discovered in the bedroom of her house by the police after they were summoned by a neighbor when Hagans did not respond to a telephone call. Hagans had been sexually assaulted and struck on the head, which caused major brain hemorrhaging. The medical examiner testified that Hagans had a weak heart and it gave out due to the stress and shock of the beating and sexual assault. Id. Semen stains from the scene were ultimately identified as Israel's through DNA testing. Id. at 385.
Evidence and testimony at trial showed that Israel stayed at several Palatka hotels after Hagans' murder and paid for the rooms in cash. Israel bought cocaine from his dealer three or four times on the day after the murder and also paid in cash. Israel told a number of individuals that he had "hit the lottery." A prisoner housed in the same cell with Israel testified that Israel stated he was charged with first-degree murder, that he "tried to knock that bitch's head off," that he sexually assaulted Hagans, and that he went into her house to steal some church money. Id. at 384-85.
Israel was the only defense witness at trial. He denied having any involvement in Hagans' murder or confessing to his cellmate. Israel testified that the law enforcement officers took Hagans' money and made the scene look like a murder. Israel insisted that his semen was not found at the scene and that the officers had planted his blood at the scene. Id. at 385.
The jury returned a guilty verdict on all four counts in the indictment. After the penalty phase, the jury returned an advisory sentence of death by a vote of eleven to one. The trial court followed the jury's *513 recommendation and sentenced Israel to death on the first-degree murder conviction. The court found four aggravating circumstances: (1) the defendant was previously convicted of violent felony; (2) the crime was especially heinous, atrocious or cruel (HAC); (3) the crime was committed while the defendant was engaged in the commission of a sexual battery, burglary, and kidnaping; and (4) the capital felony was committed for pecuniary gain. The court found two statutory mitigating circumstances: (1) the defendant was under the influence of an extreme mental or emotional disturbance at the time the crime occurred; and (2) the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. The court gave some weight to these mitigating circumstances. Id.
On direct appeal to this Court, Israel raised seven issues.[1] However, this Court found no merit to the claims and affirmed Israel's convictions and the death sentence. Id. at 394.
Israel filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, raising sixteen claims. An evidentiary hearing was conducted by the trial court on January 20, 2005. The witnesses at the hearing included Israel's trial attorney Clyde Wolf, defense mental health experts Dr. Brad Fisher (a forensic psychologist) and Dr. Jonathan Lipman (a neuropharmacologist), and State mental health expert Dr. Harry McClaren (a forensic psychologist).
Dr. Fisher testified that he had interviewed Israel on several occasions and had reviewed previous psychological evaluations and various records, including family interviews, court records, school records, and medical records. However, Dr. Fisher was unable to conduct any meaningful testing because Israel refused to cooperate. Based on the interviews and the materials that he reviewed, Dr. Fisher opined that Israel has a paranoid personality, suffered some level of neurological impairment at age five, has borderline intelligence with an IQ of 81, and has polysubstance abuse that started at an early age. Dr. Fisher testified that his findings were very similar to and consistent with those of the mental health expert who testified at Israel's trial, psychologist Dr. Harry Krop.
Dr. Lipman testified that he had reviewed the reports of the previous and current mental health experts, Israel's criminal records, this Court's opinion on direct appeal, the transcripts of the trial testimony by Israel and Dr. Krop, the transcript of the sentencing proceeding, the sentencing order, and the interviews of Israel's family members. Dr. Lipman also interviewed Israel on two separate days and discussed the case with Dr. Fisher. Dr. Lipman testified that Israel had an extensive record of drug use, principally crack cocaine. He explained that cocaine usage would tremendously exacerbate Israel's underlying psychological disorders that had been diagnosed by the other mental health experts. Dr. Lipman stated that these effects could include delusions, hallucinations, and irrational fears. However, because Israel had not cooperated with *514 him, Dr. Lipman could not offer a more specific evaluation.
The State's expert, Dr. McClaren, testified that he was able to interview Israel for about two hours. Israel refused to cooperate after this initial interview. Dr. McClaren reviewed the same documents as Drs. Fisher and Lipman, but also reviewed Israel's files from the Department of Corrections. Dr. McClaren testified that Israel meets the criteria for paranoid personality disorder and antisocial personality disorder and is suffering from polysubstance dependence. Dr. McClaren also could not rule out that Israel suffers from some degree of brain dysfunction, a delusional disorder relating to his bodily functions, depression, paraphilia (aberrant sexual arousal) with a nonconsenting partner, and sexual sadism. However, Dr. McLaren was also unable to make definitive diagnoses because of Israel's refusal to cooperate.
Trial counsel Wolfe testified that he was appointed as Israel's attorney and that he was the fourth attorney to represent Israel in his case. Wolfe was originally appointed as stand-by counsel while Israel represented himself. As soon as Wolfe was appointed as full counsel, he filed a motion for the appointment of an investigator. Because Israel denied any involvement in Hagan's homicide, Wolfe concentrated on a reasonable doubt defense. Wolfe requested Dr. Krop be appointed as a mental health expert to evaluate Israel's status. However, Israel did not cooperate with Dr. Krop's evaluation. Investigator John O'Malley contacted Israel's family members and sought Israel's school records. Israel's family was not helpful in this investigation.
The trial court issued an order denying all relief on August 9, 2005. Israel has appealed that denial to this Court. He has also petitioned this Court for a writ of habeas corpus.

APPEAL OF RULE 3.851 POSTCONVICTION MOTION
Israel appeals the denial of his postconviction motion to this Court, raising five issues. Israel asserts that: (1) trial counsel rendered ineffective assistance during closing argument of the penalty phase; (2) trial counsel rendered ineffective assistance in failing to file a sentencing memorandum for the Spencer[2] hearing; (3) trial counsel rendered ineffective assistance for failing to present mitigating evidence and to prepare an expert witness prior to his penalty phase testimony; (4) procedural and substantive errors deprived him of a fundamentally fair trial; and (5) Florida's death penalty statute is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We address each claim in turn below.
In order to succeed on his claims of ineffective assistance of trial counsel, Israel must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As explained by this Court,
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability *515 of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, but reviewing the court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).

Penalty Phase Closing Argument
Israel argues that his trial counsel did not present a proper closing argument in which he reviewed all of the possible mitigating factors. Israel cites both the brevity of the argument, which only consists of three pages in the record, and its lack of intensity. He also contends that trial counsel should have either objected to statements made by the State made during its closing argument or responded to the statements during the defense closing argument.
In the State's closing argument, the prosecutor recited the evidence in support of the aggravating factors, including that Israel had three prior convictions for violent crimes (the burglary of a structure with an assault; battery, kidnapping, robbery, and sexual battery; and battery on a law enforcement officer), that he killed Hagans during the course of a sexual battery, kidnapping and burglary, that the murder was HAC, and that the murder was committed for pecuniary gain. The State concluded its closing argument by summarizing the testimony of the defense mental health expert as follows:
So, what are we left with? All of this evidence that cries out for the death penalty and a doctor who comes in and tells you what, he couldn't help it, he was born that way. This man was born evil, born bad, he's going to be that way for now on and there's nothing I can do except identify it for you. I can give him some tests, I wish I could give him some more, but I can tell you that is what's wrong with him, he's got diffuse brain damage and he goes around raping women and beating them up. That's what's wrong with him.
Well, Ladies and Gentlemen, you decide how much mitigation that deserves. How much weight do you give to he just does it because he does it?
I submit to you that although the decision is difficult in thinking of the outcome, that is, someone's going to die here, the overwhelming evidence is easy.
Israel's trial counsel did not object to this argument by the State. Additionally, counsel's only response to these statements during defense closing argument was that "no one has testified Mr. Israel does these things just because he does these things." Trial counsel argued that Israel would be incarcerated for the rest of his life, in light of the circumstances of the case and the fact that he was already serving a sentence for a prior offense. Counsel also argued that the uncontroverted testimony of the mental health expert showed that Israel was under the influence of extreme mental or emotional disturbance and that his capacity to conform his conduct to the requirements of the law was substantially impaired. Counsel also noted that Israel's long-term cocaine use and longstanding mental and psychological problems impaired his ability to control his behavior and urged the jury to consider these in the its sentencing recommendation. Finally, counsel told the jurors that *516 they should recommend a life sentence, in light of all of these matters.
In the sentencing order, the trial court found no nonstatutory mitigating circumstances applicable to Israel's case because "[h]is record is bad, his character worse, and the offense itself is horrible." Accordingly, the trial court assigned no weight to nonstatutory mitigation. On direct appeal, Israel claimed that the trial court erred when it failed to find nonstatutory mitigating evidence of drug abuse, brain damage, and low intellectual functioning. Israel, 837 So.2d at 392. This Court found no error because "Israel failed to identify the areas of drug abuse, brain damage, and low intellectual functioning as specific nonstatutory mitigation for the trial court to consider." Id. This Court explained that, unlike statutory mitigation that has been clearly defined by the Legislature, the parameters of nonstatutory mitigation are "largely undefined" and can include "any factor that could reasonably bear on the sentence." Id. at 391-92 (quoting Nelson v. State, 748 So.2d 237, 243 (Fla.1999)). Thus, the defendant has a burden to identify the nonstatutory mitigation relied upon. Id. at 392. Israel asserts that had counsel specifically identified these nonstatutory mitigating factors during closing argument of the penalty phase, he could have persuaded the jury that a life sentence was warranted.
The lower court denied relief on this postconviction claim, stating that a review of counsel's closing argument did not reveal either deficient performance or prejudice. The court noted that counsel addressed Israel's impaired ability due to drug use and his longstanding mental and psychological problems, told the jury that Israel would die in jail if given a life sentence, and told the jury that Israel's life was in their hands.
There is no question that Wolfe's closing argument was very brief and that he did not elaborate on the nonstatutory mitigation that would support a sentence of life. Based on the testimony and evidence presented by the mental health expert at the penalty phase,[3] counsel could have argued that the nonstatutory mitigating factors of brain damage, low intellectual functioning, and drug abuse were applicable and that the factors were compounded by each other. See, e.g., Hildwin v. State, 951 So.2d 784, 785 n. 1 (Fla. 2006) (noting that the nonstatutory mitigation found by the trial court included a history of drug abuse and organic brain damage); Crook v. State, 813 So.2d 68 (Fla.2002) (reversing the trial court's rejection of defendant's brain damage as a mitigating circumstance and noting that this damage was exacerbated by his use of alcohol and drugs at the time of the murder); DeAngelo v. State, 616 So.2d 440, 443 (Fla.1993) (describing defendant's *517 brain damage and resulting personality and mood disorders as mitigating factors). Thus, in light of the sentencing order that found no nonstatutory mitigation and this Court's resolution of that issue on direct appeal, we conclude that trial counsel's closing argument could have been more detailed and could have elaborated on the nonstatutory mitigating factors. The real issue, however, is whether Israel was prejudiced by counsel's failure in this regard. We conclude that he was not.
The trial court found the statutory mental mitigators established based on the uncontroverted penalty phase testimony of Dr. Krop, which included testimony that Israel has brain damage, low intellectual functioning, and a history of cocaine abuse and suffers from a personality disorder with antisocial, paranoid, and hypochondriacal features. Dr. Krop testified that he met with Israel seven times and administered six neuropsychological tests. However, because Israel generally refused to participate in the traditional psychological testing, Dr. Krop had to rely in part on earlier psychological reports and information from Israel's family in forming his psychological diagnosis. Dr. Krop also had a long history with Israel dating back to 1993.
At the postconviction evidentiary hearing, trial counsel Wolfe explained his strategy for presenting mitigating evidence and making closing argument. Counsel considered Dr. Krop to be the most favorable witness to present mitigating evidence and the two statutory mental mitigators to be the best mitigating factors to focus on with the jury. The jury heard evidence of the nonstatutory mitigating factors of brain damage, low intelligence, and substance abuse through Dr. Krop's testimony. Counsel made a strategic decision not to focus on Israel's substance abuse or to present possibly damaging testimony from family members. Trial counsel told the jury that a life sentence would guarantee that Israel would be "incarcerated for the rest of his life" and thus they need not recommend a sentence of death. Trial counsel also reminded the jury of the uncontroverted mitigating evidence presented through Dr. Krop's testimony just a few moments before closing argument, including that Israel was under the influence of extreme mental or emotional disturbance, had substantially impaired ability to control his conduct, had longstanding psychological problems, and cocaine use further impaired his ability to control his conduct. Thus, Israel was not prejudiced by counsel's failure to argue these circumstances with more specificity or detail during closing argument.

Failure to File a Sentencing Memorandum
Israel asserts that trial counsel was ineffective for failing to file a sentencing memorandum with the trial court. The record indicates that the State submitted a sentencing memorandum arguing for the death penalty a month before the Spencer hearing. At the Spencer hearing, the court requested defense counsel to provide a sentencing memorandum analyzing the aggravating and mitigating factors. Despite this request, counsel never filed a sentencing memorandum. Further, at the subsequent sentencing hearing, counsel's only argument was an objection to the sentencing recommendations contained in the presentencing investigation report. In response to the court's questioning, counsel stated that there was nothing else he wanted to bring to the court's attention.
At the postconviction evidentiary hearing, counsel stated that he did not file a written sentencing memo because he felt he could articulate the arguments for a life sentence better verbally. Counsel could not explain why he did not make a verbal *518 argument for a life sentence or why he did not submit a sentencing memo. However, Israel did not present any new mitigating evidence at the postconviction hearing, and the testimony and diagnoses of the postconviction experts mirrored those of Dr. Krop during the penalty phase of trial.
As discussed above, while counsel's failure in this regard may have been deficient, we do not find that Israel was prejudiced by counsel's conduct. The sentencing order indicates that the court considered all of the evidence presented during the various proceedings. Further, the postconviction order notes that the court "heard and considered testimony presented at various stages of the proceedings going to non-statutory mitigators, including Mr. Israel's drug abuse, brain damage, low intellectual functioning as well as Mr. Israel's character, background, record and other circumstances surrounding the offense," but "[chose] to assign no weight to non-statutory mitigating circumstances." The court "independently identif[ied] and weigh[ed] the mitigating and aggravating factors in determining whether to impose the death penalty." Thus, counsel's failure to file a sentencing memorandum did not result in prejudice to Israel.

Mitigating Evidence and Expert Witness Testimony
Israel contends that trial counsel rendered ineffective assistance by failing to conduct a reasonable investigation of Israel's background for possible nonstatutory mitigating factors, by failing to present adequate mitigating evidence at trial, and by failing to properly prepare the sole defense mitigation witness, psychologist Dr. Krop, for his testimony at trial.
The lower court concluded that counsel's trial performance was not ineffective because counsel was able to establish the two statutory mental mitigators. The court rejected the failure to prepare the witness part of this claim as conclusory and insufficient. The order denying relief on this claim detailed the testimony from the trial and the evidentiary hearing that refuted Israel's claim, including the evidentiary hearing testimony of trial counsel Wolfe and postconviction mental health experts Dr. Fisher and Dr. Lipman.
At the evidentiary hearing, Wolfe testified about his trial strategy relating to mitigation. Wolfe testified that he hired an experienced investigator who contacted Israel's two sisters and his mother, but that their testimony would have been harmful to the case. Israel's mother told the investigator that if her son committed this crime, he deserved whatever sentence was imposed. Wolfe also explained that Dr. Krop, who was appointed as a mental health expert to evaluate Israel, had been involved with Israel since 1993. During the penalty phase of trial, Dr. Krop had testified about Israel's substance abuse, low intellectual functioning, and possible brain damage. Wolfe had offered this evidence in support of the statutory mental mitigators, which he believed the jury would find more compelling than nonstatutory mitigation. Wolfe also made a tactical decision not to focus on Israel's drug history because he believed the jury would not be sympathetic to a drug user who committed violent crimes to get drug money.
Dr. Fisher testified that he agreed with the diagnosis presented by Dr. Krop at trial, i.e., that Israel has low intellectual functioning, suffers from organic brain damage, has a personality disorder and other deficits, and has a long history of substance abuse. Dr. Lipman also agreed with Dr. Krop's trial testimony that Israel's psychological disorders would be exacerbated by his cocaine use. Even the State's expert witness, Dr. McClaren, agreed with Dr. Krop's trial diagnosis to a *519 great extent. All three postconviction experts testified that Israel had been uncooperative with them, which is also what Dr. Krop reported at trial. In fact, it appears that Dr. Krop was able to conduct a more comprehensive evaluation than the postconviction experts were. Dr. Krop successfully administered seven psychological tests and was able to offer fairly comprehensive evidence and testimony at trial regarding Israel's psychological impairments. Based on Dr. Krop's testimony, the trial court found the two statutory mental health mitigators to be applicable.
Based on the postconviction record, we conclude that Israel did not produce any mitigating evidence that was not presented at trial. Additionally, Dr. Krop did testify at trial about Israel's borderline intellectual functioning, organic brain damage, and drug use. At the evidentiary hearing, trial counsel offered strategic reasons for not presenting family testimony (it would be more harmful than helpful) and for not emphasizing Israel's drug problems (the jury would not be sympathetic to a drug abuser who committed violent crimes to get drug money). Based on all of the above, the postconviction court was correct in finding that trial counsel was not deficient in his presentation of mitigating evidence.
Israel also argues that counsel was ineffective in preparing Dr. Krop to testify at the penalty phase. Israel complains that Dr. Krop based his trial diagnosis in part on psychological reports filed by other mental health experts who had evaluated Israel for competency to stand trial. He also asserts that Dr. Krop should not have testified about Israel's failure to cooperate in these evaluations or about the conclusions reached by the other evaluators, including one psychiatrist who found no evidence of psychiatric illness.
Dr. Krop testified at trial that he had reviewed three previous evaluations by mental health professionals, that he would always review prior evaluations in making an evaluation of an individual, and that Israel had not been cooperative during these previous evaluations. While Dr. Krop testified that one of the experts had detected no psychiatric illness, he also testified that the other two doctors had diagnosed drug abuse, serious depression, paranoid personality disorder, and antisocial personality disorder, which were consistent with Dr. Krop's diagnosis. Even Israel's own postconviction defense experts had to rely on previous reports and information in making their evaluations because Israel refused to cooperate with them. As noted by all of the experts, Israel limited their evaluations by his lack of cooperation. Counsel cannot be deemed ineffective because his client refused to fully cooperate in psychological evaluations. Thus, we agree with the trial court's ruling that Israel is not entitled to postconviction relief on this claim.

Apprendi and Ring Claims
Israel claims that Florida's death penalty statute is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because it does not require the aggravating circumstances to be specified in the indictment, does not require the jury to be unanimous as to the existence of specific aggravating circumstances, and permits death sentence recommendations to be based on a simple majority vote of the jury. We conclude that these claims are procedurally barred in these postconviction proceedings.[4]
The United States Supreme Court's decision in Schriro v. Summerlin, 542 U.S. *520 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), held that the decision in Ring is not retroactive. A majority of this Court has also concluded that Ring does not apply retroactively in Florida to cases that are final, under the test of Witt v. State, 387 So.2d 922 (Fla.1980). See Johnson v. State, 904 So.2d 400, 412 (Fla.2005). This Court has similarly concluded that Apprendi is not retroactive in application. See Hughes v. State, 901 So.2d 837, 848 (Fla.2005). Thus, Israel is not entitled to relief on these claims.

Cumulative Error
Israel also claims that he was denied a fundamentally fair trial based on cumulative errors that occurred. "However, where the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails." Parker v. State, 904 So.2d 370, 380 (Fla.2005); see also Griffin v. State, 866 So.2d 1, 22 (Fla. 2003). As discussed in the analysis of the individual issues above, the alleged errors are either meritless, procedurally barred, or do not meet the Strickland standard for ineffective assistance of counsel. Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit. Thus, Israel is not entitled to relief on this claim.

PETITION FOR WRIT OF HABEAS CORPUS
Israel has also petitioned this Court for a writ of habeas corpus, raising four claims. He asserts that: (1) several of the standard jury instructions given in Florida capital cases are unconstitutional and appellate counsel was ineffective for failing to litigate these issues on appeal; (2) he may be incompetent to be executed; (3) appellate counsel was ineffective for failing to argue that the rules prohibiting juror interviews violate various constitutional guarantees; and (4) execution by lethal injection is cruel and unusual punishment. We address each claim in turn below.

Jury Instructions
Israel raises a number of claims of instructional error relating to Florida's death penalty. He claims that: (1) the instruction on the "committed while engaged in the commission of a felony" aggravating factor results in an unconstitutional automatic aggravator; (2) the jury instructions on the weighing of aggravating and mitigating factors shifted the burden to him to prove that death was not the appropriate sentence and improperly led the jury to believe that it need not consider mitigating factors unless they outweighed the aggravating factors; and (3) the jury instructions diminished the jury's sense of responsibility for sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), as applied in Ring. Finally, he asserts that appellate counsel was ineffective for not litigating these claims of instructional error on direct appeal.
Claims regarding the adequacy or constitutionality of jury instructions should be raised on direct appeal. See Thompson v. State, 759 So.2d 650, 665 (Fla.2000) (stating that substantive challenges to jury instructions are procedurally barred in postconviction challenges because the claims can and therefore should be raised on direct appeal). Moreover, this Court will not consider such procedurally barred claims under the guise of ineffective assistance of counsel. See Rodriguez v. State, 919 So.2d 1252, 1280 (Fla. 2005) (stating that claims that could have been raised on direct appeal cannot be relitigated under the guise of ineffective assistance of counsel).
Finally, to the extent that Israel asserts ineffective assistance of appellate *521 counsel for not litigating these claims of instructional error on direct appeal, he has not met his burden. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (explaining that the standard of review applicable to claims of ineffective assistance of appellate counsel raised in a habeas petition mirrors the Strickland standard for trial counsel ineffectiveness, i.e., deficient performance and prejudice from the deficiency). Jury instructions "are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred." State v. Delva, 575 So.2d 643, 644 (Fla.1991). Israel has not asserted that trial counsel objected to any of these instructions. Nor has Israel shown that the alleged instructional error was fundamental error that could be raised on appeal even though not preserved at trial. Thus, appellate counsel cannot be deemed ineffective for not raising an unpreserved claim on appeal. See Rodriguez, 919 So.2d at 1281; Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991).
Additionally, even assuming that these claims had been properly preserved for appellate review, appellate counsel could not be deemed ineffective for failing to raise issues that this Court has consistently found to be without merit. See, e.g., Miller v. State, 926 So.2d 1243, 1257 (Fla. 2006) (rejecting claim that instruction diluted the jury's responsibility by labeling their penalty phase verdict as advisory and not binding); Perez v. State, 919 So.2d 347, 368 (Fla.2005) (same), cert. denied, 547 U.S. 1182, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006); Griffin v. State, 866 So.2d 1, 14 (Fla.2003) (same); Rodriguez, 919 So.2d at 1280 (rejecting claim that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence); San Martin v. State, 705 So.2d 1337, 1350 & n. 5 (Fla.1997) (concluding that weighing provisions in Florida's death penalty statute requiring the jury to determine "[w]hether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist" and the standard jury instruction thereon did not unconstitutionally shift the burden to the defendant to prove why he should not be given a death sentence); Blanco v. State, 706 So.2d 7, 11 (Fla.1997) (finding instruction on aggravating circumstance of murder in the course of a felony does not constitute an automatic aggravator). Appellate counsel cannot be deemed ineffective for failing to pursue meritless issues on direct appeal. Freeman v. State, 761 So.2d 1055, 1070-71 (Fla.2000). Thus, Israel is not entitled to habeas relief on this claim of ineffective assistance of appellate counsel.

Incompetent to be Executed
Florida Rule of Criminal Procedure 3.811(a) provides that "[a] person under sentence of death shall not be executed while insane to be executed." Subsection (c) of the same rule provides that "[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes."
Israel concedes that this claim is not ripe for review as he has not yet been found incompetent and a death warrant has not yet been signed. He contends that he is only raising this issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting Coney's claim that he is insane to be executed where he acknowledged that claim was not *522 yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed "not ripe for review" where defendant was not yet found incompetent and death warrant had not yet been signed; noting that defendant made claim "simply to preserve it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity with regard to his execution if a death warrant has not been signed). Thus, Israel is not entitled to habeas relief on this claim.

Juror Interview Rules
Israel argues that his appellate counsel was ineffective for failing to challenge the constitutionality of Florida's restrictions on post-trial jury interviews by attorneys. He claims that rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar and Florida Rule of Criminal Procedure 3.575 violate his constitutional rights of due process and equal protection.
Rule 4-3.5(d)(4) prohibits a lawyer from initiating communication with any juror regarding a trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." R. Regulating Fla. Bar 4-3.5(d)(4). Before conducting such an interview, the lawyer must file a notice of intent to interview, setting forth the name of the juror to be interviewed. The lawyer must also deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
Rule 3.575, which became effective in January 2005, establishes the procedure for seeking juror interviews where a party has reason to believe that the verdict may be subject to legal challenge. This rule requires the party to file a motion to interview with the court and to set forth the names of the jurors to be interviewed and the reasons the party believes the verdict may be subject to legal challenge. If the judge makes a finding that the verdict may be subject to challenge, he or she enters an order permitting the interview, which is conducted in the presence of the court and the parties. If the court does not find a reason to challenge the verdict, the court denies permission to interview.
We conclude that Israel is not entitled to habeas relief on this claim for a number of reasons. First, Israel could have and should have brought this claim on direct appeal. Thus, it is procedurally barred in this postconviction proceeding. See Suggs v. State, 923 So.2d 419, 440 (Fla.2005) (finding that postconviction court was correct to find juror interview claim procedurally barred because not raised on direct appeal). Second, even though Israel couches this claim as ineffective assistance of appellate counsel for not raising the claim on direct appeal, he makes no assertion that trial counsel actually filed a motion to interview jurors that was denied, nor has he alleged any specific juror misconduct that would warrant a juror interview. Id. at 440. Thus, he has not shown the two prongs required to prove ineffective assistance of appellate counsel that would warrant habeas relief. See Rutherford, 774 So.2d at 643. Third, this Court has consistently rejected constitutional challenges to rule 4-3.5(d)(4). See, e.g., Barnhill v. State, 971 So.2d 106, 117 (Fla.2007); Power v. State, 886 So.2d 952, 957 (Fla.2004); Johnson v. State, 804 *523 So.2d 1218 (Fla.2001).[5]
Moreover, both rules provide a mechanism for defendants to interview jurors when there are good faith grounds for a challenge. Even before rule 3.575 was adopted, an attorney was required to make sworn allegations that, if true, would require a new trial before being allowed to interview any member of the jury. Johnson, 804 So.2d at 1225. Under rule 3.575, the party who wants to conduct juror interviews must file a motion stating the name of the juror to be interviewed and the reasons the party believes the verdict is subject to challenge. As noted above, Israel has not alleged that he filed a motion requesting permission to interview jurors, nor has he alleged any specific juror misconduct. As in many other cases, Israel's claim appears to be nothing more than a request to investigate possible grounds for finding juror misconduct. Suggs, 923 So.2d at 440; Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (finding that a defendant does not have a right to conduct "fishing expedition" interviews with the jurors after a guilty verdict is returned).

Lethal Injection
Finally, Israel claims that execution by lethal injection is cruel and unusual punishment because, if not properly carried out, there is a risk of unnecessary pain. Israel does not assert that lethal injection is inherently cruel and inhumane and, in fact, we have specifically held that it is not. See, e.g., Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000).
When complications occurred in the administration of chemicals during the execution of Angel Diaz in December 2006, the Governor issued an executive order creating a Commission on the Administration of Lethal Injection. The Commission held four days of hearings on the lethal injection procedures and issued a report to the Governor in March 2007. See Lightbourne v. McCollum, 969 So.2d 326, 329-30 (Fla. 2007). After the Commission issued its report, a circuit court held a thirteen-day evidentiary hearing in Lightbourne on the issue of lethal injection and the procedures used by the Department of Corrections (DOC) in carrying out executions. In the wake of the Commission report, questions raised by the circuit court during its hearing, and DOC's own internal review, the execution procedures were revised. Id. at 346. In September 2007, the circuit court entered a final order, finding that the August 2007 revised procedures were not unconstitutional. Id. at 331. On appeal, we concluded that Florida's current lethal injection procedures, as actually administered through the DOC, do not violate the constitutional prohibition against cruel and unusual punishment. Id. at 353.
Israel makes no new argument to support his habeas claim in this case. In light of the extensive evidence presented during the Lightbourne and Commission hearings and the revised procedures that have been implemented by DOC, we conclude that Israel is not entitled to habeas relief on this issue.

CONCLUSION
For the reasons discussed above, we affirm the circuit court's denial of postconviction relief and we deny Israel's petition for habeas relief.
It is so ordered.
*524 WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., and ANSTEAD, J., concur in result only.
NOTES
[1] Israel claimed the trial court erred in (1) conducting portions of the trial when he was involuntarily excluded; (2) denying his motion for continuance of trial; (3) denying his motion for a mistrial; (4) requiring him to be held in visible restraints before the jury; (5) ignoring nonstatutory mitigating evidence of drug abuse, brain damage, and low intellectual functioning presented during the penalty phase; and (6) allowing the jury's death sentence recommendation to stand even though it was grounded on a split jury vote. Israel also claimed that his death sentence was disproportionate.
[2] Spencer v. State, 615 So.2d 688, 690-91 (Fla. 1993) (explaining the procedure to be used in sentencing phase proceedings, including a hearing at which both sides can present argument and additional evidence).
[3] Dr. Krop testified that Israel had been responsive to neuropsychological testing and that he had administered six separate tests. The tests revealed an IQ of 81, deficits across the board and "deficiencies in almost all tests," and brain impairment indicative of lifelong organic or neurological impairment rather than a head injury. Dr. Krop also testified that Israel had a history of substance abuse, probably cocaine, had a personality disorder with antisocial, paranoid, and hypochondriac features, and suffered from "some other personality deficits." Israel's school records indicated problem behavior, low academic performance, that "his mind seems to wander as if he's in a daze", and that he appeared "emotionally disturbed for hours at a time." Dr. Krop opined that Israel was under the influence of extreme mental or emotional disturbance at the time of the murder. He also explained that cocaine use would create further problems in terms of impaired judgment, poor impulse control, and inability to consider the consequences of his actions.
[4] In addition, all of these claims have been denied by this Court on the merits.
[5] The procedure outlined in rule 3.575 is consistent with rule 4-3.5(d)(4). Rule 3.575 was adopted because the Rules of Criminal Procedure did not provide a procedure for attorneys to interview jurors following a criminal trial. See Amendments to Fla. Rules of Crim. Pro., 886 So.2d 197, 198-99 (Fla.2004). Rule 3.575 did not abrogate rule 4-3.5(d)(4). Fla. R.Crim. P. 3.575 court comm.