# Supreme Court of Florida

_____

No. SC14-979
_____

**DONALD LENNETH BANKS**,
Appellant,

vs.

**STATE OF FLORIDA**,
Appellee.

_____

No. SC15-297
_____

**DONALD LENNETH BANKS**,
Petitioner,

vs.

**JULIE L. JONES, etc.**,
Respondent.

[April 20, 2017]

PER CURIAM.

Donald Lenneth Banks appeals the denial of his motion to vacate his

conviction of first-degree murder and sentence of death filed under Florida Rule of

Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. For

the reasons that follow, we affirm the denial of his postconviction guilt phase claims, deny his habeas petition, but vacate his death sentence, and remand for a new penalty phase.[1]

## I.  BACKGROUND

Donald Lenneth Banks was convicted and sentenced to death for the 2005 murder of Linda Volum.  This Court's opinion on direct appeal included the following regarding the murder and Banks' subsequent trial:

> During the late evening hours of March 9 or the early morning hours of March 10, 2005, the Victim was stabbed to death.  The killing probably occurred between midnight and 4:00 a.m. on March 10, 2005.  The Victim received fourteen knife wounds, one to the neck, ten to the chest or abdomen, and three to her left forearm and hand.  She also received abrasions and contusions in different areas of her body, especially around the hands and to the top of the head.  She further received several small cuts in different areas, including the back of the hand and around the left eye.  At least six of the wounds were hard stabs from a knife, rather than simple jabs, in that they penetrated the Victim's ribs or sternum.  One stabbing penetrated her liver, two or three penetrated her heart, and one penetrated her lung.  The Victim attempted to defend herself against this attack, and was conscious and aware throughout the attack.  She ultimately died from a loss of blood due to the stab wounds to her heart.
> Between 2:40 and 2:47 a.m. on the same day, then, a person attempted to access an automatic teller machine with the Victim's ATM card.  This event was recorded by a video surveillance camera.  Though the face of the person was not

---

1. We have jurisdiction.  See art. V, § 3(b)(1), (9), Fla. Const.  Because we are remanding for a new penalty phase, we do not address Banks' penalty phase claims.

- 2 -

revealed in the recording, it was clearly a black male wearing a unique shirt, and jacket, visually identical to the ones [Banks] was wearing that night. ([Banks] is also a black male). Furthermore, this person was driving a white, compact sedan which matched the description of the Victim's automobile. The person was accompanied to the ATM location by another, still unidentified person.

Before dawn on the same morning, then, [Banks] returned to a residence he shared with his girlfriend, one Sudi[e] Johnson ("Johnson"). He had been away from the residence all night. He was driving a vehicle which appeared to be identical to that of the Victim. He entered the home limping, from a wound to his leg. He carried with him a pillowcase the same color as another pillowcase found later that day in the Victim's home. Within the pillowcase, he carried bloody underclothing, and the Victim's laptop computer. When Johnson asked him about the bloody clothing, [Banks] told her that "I just murked somebody." The word "murk" is a slang term meaning murder. [Banks] had been bleeding from the wound to his leg, and continued to bleed while he was at the residence. However, about an hour after his arrival, he again departed in the same automobile in which he had arrived.

Later the same morning the Victim's automobile was involved in a traffic accident. After the accident, the occupants of the vehicle fled from the scene. Deputy sheriffs investigating the accident, though, were able to ascertain that it was owned by the Victim. In the course of investigating the accident, then, a deputy went to the Victim's residence, where he found her dead body.

About a day and a half after the foregoing events, Johnson took [Banks] to a hospital so that he could receive medical care for his leg wound. The wound subsequently proved to be almost visually identical to one of the wounds the Victim had received during the murder.

Johnson testified at trial that when [Banks] initially told her he had murdered someone, she did not believe him. She thought he was simply seeking attention. However, several days later she and [Banks] were watching a videotaped television program when a news flash was aired regarding the murder of Linda Volum. [Banks] then stated to Johnson "You see that?"

and "I did that." These remarks led Johnson to question [Banks] about the murder. In response, he related to her facts about the crime which could only have been known by someone who was present at the murder, or sheriff's investigators. He also told her that he had committed the crime as a "murder pay-back," and that he had done so after entering the Victim's residence in only his underclothing. He further said that when he left the residence "I had set the house up as a prop." He explained that he had done so by putting a crack pipe in the residence, to make the murder appear to be "foul play." [Banks] related [to Johnson] that he had received the wound to his leg on the night in question by accidentally stabbing himself in the course of stabbing the Victim to death.

The sheriff's office investigation of the crime scene produced substantial physical evidence of [Banks'] guilt. Indeed, a crack pipe, along with a knife, was found under the Victim's body. Blood, which DNA testing proved to be [Banks'], was found in several places in the house. [Banks' semen] was found on the Victim's body, and a mixture of blood from both [Banks] and the Victim was found near the body. [Banks'] bare footprint was also found in some blood in the house. In addition, the [prints] of some unknown person [were] found in blood in one place, indicating that another person may have been present at the murder, besides [Banks]. That person has never been identified.

During the guilt phase, Banks maintained his innocence. He testified that he sold crack out of Volum's residence and that Volum had exchanged sex as well as the use of her laptop and vehicle for crack. Banks stated that during the evening of Volum's murder he had cut his fingers on a crack pipe, thereby explaining his blood in Volum's residence. He also testified that Volum had asked him to go to the ATM for her and that an acquaintance, "Bo," accompanied him on the trip. He stated that when he left that night to go home "Bo" remained at Volum's residence. However, the jury found Banks guilty of first-degree murder.

The defense, during the penalty phase, presented the testimony of Banks' father and a forensic psychologist. Banks' father testified that he had not been a part of his son's life since his son was seven years old. The psychologist testified that there was no evidence of any major mental illnesses or thought disorders. However, testing

suggested mild to moderate deficits in frontal lobe functioning, which is responsible for planning, problem solving, and impulse control. The psychologist diagnosed him with a cognitive disorder not otherwise specified as well as antisocial personality disorder. Moreover, the psychologist noted a history of alcohol and substance abuse.

The jury recommended the death penalty by a vote of ten to two, and a Spencer [v. State, 615 So. 2d 688 (Fla. 1993),] hearing was held on August 6, 2008. Thereafter, following the jury's recommendation and concluding that the aggravating circumstances outweighed the mitigating circumstances, the trial court sentenced Banks to death. In so doing, the trial court found the following aggravators: (1) Banks had been previously convicted of violent felonies (very great weight); (2) the crime was especially heinous, atrocious, or cruel (very great weight); and (3) the crime was committed in a cold, calculated, and premeditated manner (great weight). The trial court found the following mitigators: (1) Banks has a low IQ (very little weight); (2) Banks has a deficit in his brain (moderate weight); (3) Banks has antisocial personality traits (little weight); (4) Banks was not the only participant in the crime (no weight); and (5) Banks had a difficult youth (little weight).

Banks v. State, 46 So. 3d 989, 992-94 (Fla. 2010) (footnotes omitted) (quoting sentencing order).

On direct appeal, this Court affirmed Banks' conviction and sentence, rejecting the following claims: "(A) the trial court erred in denying a cause challenge to a prospective juror whose daughter had been the victim of an armed robbery; (B) the trial court erred in allowing the State to exercise peremptory challenges against two African-Americans; (C) the trial court erred in admitting DNA results without requiring the presentation of statistical evidence; (D) the trial court erred in denying a motion for mistrial when a witness mentioned Banks'

involvement in another crime; (E) the trial court erred during the penalty phase by allowing the State to present a video of Banks committing an armed robbery; and (F) the trial court erred in finding the cold, calculated, and premeditated (CCP) aggravating circumstance." Id. at 994-95.

After holding an evidentiary hearing, the postconviction court denied Banks' initial 3.851 motion. This appeal and petition for habeas relief followed.

## II. ANALYSIS

### A. Consent to Search

First, Banks claims that trial counsel was ineffective for failing to move to suppress items recovered after a second entry of the residence shared by Banks and Sudie Johnson based upon Ms. Johnson's alleged coerced consent to search. However, because the claim is without merit, trial counsel cannot be deemed ineffective for failing to raise it.

Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), this Court has explained that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010) (quoting Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986)).

Regarding the deficiency prong of Strickland, there is a strong presumption that trial counsel's performance was not ineffective. Strickland, 466 U.S. at 690. Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Further, the defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). And counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So. 2d 1366, 1369 (Fla. 1992), abrogated on other grounds by Deren v. State, 985 So. 2d 1087 (Fla. 2008).

"Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, but reviewing the trial court's legal conclusions de novo." Dennis v. State, 109 So. 3d 680, 690 (Fla. 2012).

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Wyche v. State, 987 So. 2d 23, 26 (Fla. 2008) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).

Here, during the postconviction evidentiary hearing and during pretrial depositions, Ms. Johnson mentioned feeling pressured into consenting to law enforcement's initial entry of her home to apprehend Banks for a crime unrelated to Linda Volum's murder. Ms. Johnson specifically mentioned feeling pressured by the presence of law enforcement at her house as well as a discussion of the possible destruction of her belongings during a search. Importantly, however, she also acknowledged during a pretrial deposition that she would have voluntarily consented to the entry anyway absent any such feelings of pressure.

Moreover, Ms. Johnson's statements regarding pressure only relate to law enforcement's first entry into her home for the purposes of apprehending Banks. Ms. Johnson subsequently drove to the police station on her own and, during an interview with law enforcement, conveyed the details of Banks' statements to her regarding Ms. Volum's murder. During this interview, she orally and in writing consented voluntarily to law enforcement returning to her house to search for evidence related to Ms. Volum's murder. She accompanied law enforcement back to her house and assisted in the search of her home by pointing out relevant

evidence. And she expressly acknowledged during pretrial depositions that her consent to law enforcement's second entry was voluntarily given without any threats or pressure.

Accordingly, because a motion to suppress the evidence retrieved during the second search would have been meritless, trial counsel cannot be deemed ineffective for failing to raise it. We affirm the denial of relief.

## B. DNA Evidence

Next, Banks alleges that trial counsel was ineffective for failing to object to the admission of DNA evidence without the presentation of population frequency statistics. However, because Banks has failed to demonstrate deficiency and because the jury did hear testimony regarding the significance of the DNA matches, we affirm the denial of relief.

First, trial counsel made a reasonable strategic decision to not object to the non-presentation of population statistics. Trial counsel explained during the evidentiary hearing that he wanted to avoid the jury hearing that the population statistic of one in 56 quadrillion had been calculated. Trial counsel believed that this overwhelming statistic would leave the jury with no doubt of Banks' guilt. Avoiding the presentation of this statistic was not outside the "broad range of reasonably competent performance under prevailing professional standards."

Bolin, 41 So. 3d at 155 (quoting Maxwell, 490 So. 2d at 932). Therefore, Banks has failed to demonstrate deficiency.

Second, in Banks' trial, the State's DNA expert provided testimony regarding the quantitative and qualitative significance of the DNA matches. For example, Mr. Pollock testified that semen from genital, vulva vaginal, and rectal swabs of the victim matched Banks at all 13 loci plus the gender marker. Then, using DNA charts, Mr. Pollock explained to the jury how he viewed the DNA data as a series of peaks, which correspond to fragment sizes. Mr. Pollock also testified that "statistics are applied to the entire profile to determine how common that profile is" and that "[j]ust because one locus is common, by the time you get to 13 it becomes extremely rare, extremely."

Accordingly, trial counsel was not ineffective for failing to object to the admission of DNA testimony without the presentation of population statistics, statistics that would have included a one in 56 quadrillion match. We affirm the trial court's denial of this claim.

## C. Motive to Testify

Next, Banks argues that trial counsel was ineffective for attempting to impeach Sudie Johnson's motive for testifying against him at trial. During cross-examination, trial counsel asked Ms. Johnson if she stopped supporting Banks because he was having sex with Ms. Volum. Ms. Johnson responded that she

stopped supporting Banks after seeing a video of him stabbing another individual in an unrelated crime.  However, this Court affirms the denial of relief.

First, Banks has not established deficiency.  It was sound trial strategy to attempt to impeach Ms. Johnson, one of the State's most important witnesses, by suggesting that she was testifying against Banks as revenge for his unfaithful relationship with Ms. Volum.  Thus, trial counsel's line of questioning was not outside the "broad range of reasonably competent performance under prevailing professional standards."  Id. (quoting Maxwell, 490 So. 2d at 932).

Second, Banks has not established prejudice.  During the guilt phase, the jury was aware that Banks had committed other felonies since Banks acknowledged during his guilt phase testimony that he had nine felony convictions.  Furthermore, after Ms. Johnson's statement, the trial court issued a curative instruction and polled the jurors to ensure that they could follow the instruction and disregard Ms. Johnson's remark.  Banks, 46 So. 3d at 998.  Thus, there is not "a reasonable probability that, 'absent the [remark], the factfinder would have [had] a reasonable doubt respecting guilt.' "  Dennis, 109 So. 3d at 690 (quoting Strickland, 466 U.S. at 695).  In other words, our confidence in the outcome is not undermined.  See id.

Accordingly, we affirm the postconviction court's denial of relief.

## D. Felony, Letters, and Relationships

Banks next claims that trial counsel was ineffective for failing to impeach Sudie Johnson with her felony conviction and letters she wrote to Banks while he was incarcerated. Banks also asserts that trial counsel was ineffective for failing to question Detective Bodine about his interviews of three men with whom the victim had relationships. We affirm the denial of this claim.

First, Banks has failed to demonstrate deficiency. The record reflects that trial counsel did ask Sudie Johnson on cross-examination how many times she had been convicted of felonies and that trial counsel referred to Ms. Johnson as a convicted felon during closing arguments. Counsel cannot be considered deficient for failing to do what he actually did. Moreover, trial counsel made a strategic decision to not use the letters Ms. Johnson wrote to Banks since those letters, while perhaps containing information that might have been somewhat helpful, also included damaging information about Banks. Additionally, trial counsel pursued a reasonable strategy during his cross-examination of Detective Bodine. To cast doubt on the thoroughness of the investigation, trial counsel chose to highlight possible avenues that were not investigated rather than question the detective about what leads were investigated. Counsel's strategic decisions were not outside the "broad range of reasonably competent performance under prevailing professional standards." Bolin, 41 So. 3d at 155 (quoting Maxwell, 490 So. 2d at 932).

- 12 -

Second, Banks has not established prejudice. The information in Ms. Johnson's letters that allegedly could have been used for impeachment purposes included the facts that Ms. Johnson was angry with Banks due to his infidelity and that she felt pressured by law enforcement. However, during the trial, Ms. Johnson specifically denied that her anger with Banks is what motivated her to cooperate with law enforcement. She also testified that her cooperation was voluntary. And the jury learning that law enforcement interviewed (and apparently ruled out) three other men who had relationships with Ms. Volum before pursuing charges against Banks would not have been very beneficial to Banks' case. Accordingly, Banks has not demonstrated a reasonable probability of a different outcome. In other words, our confidence in the outcome is not undermined.

Accordingly, we affirm the postconviction court's denial of this claim.

## E. Cashier's Testimony

Banks also asserts that trial counsel was ineffective for failing to present the testimony of the cashier who handled Banks' and Ms. Volum's purchase at the grocery store before her murder. However, we affirm the denial of this claim.

Banks has failed to establish deficiency. Trial counsel testified during the evidentiary hearing that he had concerns that this testimony could possibly support the pecuniary gain aggravator and highlight Banks' selling of drugs to the victim. Avoiding these possible implications of the cashier's testimony is not outside the

- 13 -

"broad range of reasonably competent performance under prevailing professional standards." Id. (quoting Maxwell, 490 So. 2d at 932).

Additionally, Banks failed to establish prejudice. The jury learned from other evidence that Banks and Ms. Volum went together to the grocery store shortly before her murder, that Ms. Volum purchased items, and that she was unsuccessful in her attempts to receive cash back as part of the transaction. While the cashier's testimony may have corroborated Banks' testimony that there was no animosity between Banks and Ms. Volum, it also would have supported the State's theory that the murder was payback and that the victim could not access money to pay Banks. At best, the cashier's testimony would have had minimal beneficial effect. Therefore, there is no reasonable probability of a different verdict had trial counsel presented the cashier's testimony. In other words, our confidence is not undermined.

Accordingly, we affirm the postconviction court's denial of this claim.

## F. Prosecutor's Comments

Additionally, Banks asserts that trial counsel was ineffective for failing to object to allegedly improper prosecutorial comments, specifically comments related to the nature of Banks' and the victim's sexual interaction on the night of the murder, the veracity of Sudie Johnson's testimony, and Banks' nine felony

convictions.[2]  However, because the comments were not improper when read in context, we affirm the denial of relief.  See Hildwin v. State, 84 So. 3d 180, 191 (Fla. 2011) ("In order to prevail on an ineffective assistance of counsel claim on this ground, [the defendant] 'must first show that the comments were improper or objectionable and that there was no tactical reason for failing to object.'  Stephens v. State, 975 So. 2d 405, 420 (Fla. 2007).  Second, he must demonstrate prejudice.").

First, Banks asserts that the prosecutor improperly alleged that a sexual battery occurred the night of the murder rather than consensual sex.  However, the prosecutor emphasized during opening and closing arguments that the State could not prove sexual battery beyond a reasonable doubt and that it was not the jury's job to determine whether a sexual battery had occurred.  When read in context, the prosecutor mentioned a possible sexual relationship during his opening statement to explain to the jury that Ms. Volum may have known Banks.  And, when read in context, it is clear that the focus of the prosecutor's closing argument was that whomever had sex with Ms. Volum the night of the murder (whether it was consensual or not) was the individual most likely to have killed her since Ms. Volum was found naked in bed.  Moreover, it was an accurate reflection of the

---

2. Because we remand for a new penalty phase, we do not address the prosecutorial comment during the penalty phase that Banks alleges was improper.

record to assert that Banks' statements constituted the evidence of consensual sex. And because the defense argued that the sex was consensual, the State could counter argue that it may have been otherwise even if sexual battery could not be proven beyond a reasonable doubt. Therefore, the prosecutor's statements about the nature of the sexual relationship were not improper, and trial counsel was not ineffective for failing to object.

Second, Banks asserts that trial counsel should have objected when the prosecutor asked Banks on cross-examination whether Sudie Johnson was lying during her testimony and whether Banks had an interest in the outcome of the case. However, Banks put his credibility at issue when he testified during the guilt phase, and Banks' testimony directly disputed many aspects of Sudie Johnson's testimony. In fact, on direct, trial counsel asked Banks why Sudie Johnson was lying and implicating him. Therefore, the prosecutor's line of questioning on cross-examination was not improper. Trial counsel cannot be deemed ineffective for failing to raise a meritless objection.

Third, Banks claims that trial counsel should have objected when the State referred to Banks' felony convictions during closing arguments. However, a witness, including a defendant, may be impeached with felony convictions. And discussing Banks' credibility in light of his felony convictions during closing constituted comments upon facts in evidence. See Conahan v. State, 844 So. 2d

- 16 -

629, 640 (Fla. 2003) ("In closing argument, counsel is permitted to review the evidence and fairly discuss and comment upon properly admitted testimony and logical inferences from that evidence.").

Accordingly, because the prosecutor's comments were not improper when considered in context, trial counsel cannot be deemed ineffective for failing to object. We affirm the denial of this claim.[3]

## G. Principals Instruction

Banks further alleges that appellate counsel was ineffective for failing to claim on direct appeal that the trial court abused its discretion by instructing the jury on the principal theory. However, we deny this habeas claim.

Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus. Valle v. Moore, 837 So. 2d 905, 907 (Fla. 2002); Freeman v. State, 761 So. 2d 1055, 1069 (Fla. 2000). The standard of review for claims of ineffective assistance of appellate counsel mirrors the Strickland standard for ineffective assistance of trial counsel. Valle, 837 So. 2d at 907. In order to grant habeas relief on ineffectiveness of appellate counsel, this Court must determine:

> first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably

---

3. We also deny Banks' cumulative error claim. See Israel v. State, 985 So. 2d 510, 520 (Fla. 2008).

outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986) (citing Johnson v. Wainwright, 463 So. 2d 207, 209 (Fla. 1985)).

Furthermore, appellate counsel cannot be deemed ineffective for failing to raise meritless issues or issues that were not properly raised in the trial court and are not fundamental error. Valle, 837 So. 2d at 908. "In fact, appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue." Id. (citing Jones v. Barnes, 463 U.S. 745, 751-53 (1983); Provenzano v. Duggar, 561 So. 2d 541, 549 (Fla. 1990)).

In Banks' case, the trial court instructed the jury regarding the principal theory as follows:

Now, principals. If the defendant helped another person or persons commit a crime. The defendant is a principal and must be treated as if he had done all the things the other person or persons did, if, one, the defendant had a conscious intent that the criminal act be done and, two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime.
To be a principal, the defendant does not have to be present when the crime is committed.

This Court has explained that "[c]harges of the Court must be based upon facts in proof, and if not so based upon the facts in proof[,] it is error to give them;

and the court below erred in giving the quoted charge." Bradley v. State, 89 So. 359, 359 (Fla. 1921); see also Buford v. Wainwright, 428 So. 2d 1389, 1390-91 (Fla. 1983) ("[O]nly instructions which have support in the record should be given to the jury."). And the First District has explained the following regarding the principals instruction in particular:

> The principals instruction may be given if the evidence adduced at trial supports such an instruction. See Masaka v. State, 4 So. 3d 1274, 1284 (Fla. 2d DCA 2009); Wells v. State, 967 So. 2d 418, 419 (Fla. 1st DCA 2007); Lewis v. State, 693 So. 2d 1055, 1057 (Fla. 4th DCA 1997); Thomas v. State, 617 So. 2d 1128, 1128 (Fla. 3d DCA 1993). If there is no evidence that would support the principals theory, then the reading of the instruction is error. See id. Such an error is not harmless when it is capable of misleading the jury in such a way that the defendant's right to a fair trial is prejudiced.

McGriff v. State, 12 So. 3d 894, 895 (Fla. 1st DCA 2009).

Here, the trial court did not abuse its discretion in giving the principals instruction because there was evidence presented that Banks acted in concert with someone else in committing the murder. Cf. Lovette v. State, 654 So. 2d 604, 606 (Fla. 2d DCA 1995) ("The trial court committed reversible error in instructing the jury on the principal theory because there was no evidence that Mr. Lovette acted in concert with anyone in committing the theft or the burglary."). Specifically, the State presented evidence of a print in blood at the crime scene from an unidentified individual, which supports that another individual was with Banks at the crime scene at the time of the murder. Moreover, the State presented surveillance video

of Banks driving the victim's vehicle with an unidentified individual sitting in the passenger's seat. Banks himself stated that another man he named as "Bo" was present with him at the victim's home the night of the murder and was with him in her vehicle when he drove to the ATM and attempted to use the victim's ATM card. Therefore, because there was evidence in the record supporting that Banks acted in concert with someone else, the trial court did not abuse its discretion in giving the principal theory instruction. Cf. Masaka, 4 So. 3d at 1284 ("While it is true that the trial court has broad discretion in instructing the jury, see Kearse v. State, 662 So. 2d 677, 682 (Fla. 1995), it is also true that a trial court errs when it gives an instruction that has no factual basis in the record[.]").

Accordingly, appellate counsel cannot be deemed ineffective for failing to raise this nonmeritorious claim on direct appeal. We deny this habeas claim.

## H. Hurst

Finally, we consider whether Banks is entitled to relief after the United States Supreme Court issued its decision in Hurst v. Florida, 136 S. Ct. 616 (2016). Because the jury recommended the death penalty by a vote of ten to two, we conclude that Banks' death sentence violates Hurst. See Kopsho v. State, 209 So. 3d 568, 570 (Fla. 2017). We must then consider whether the Hurst error was harmless beyond a reasonable doubt:

> The harmless error test, as set forth in Chapman[v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the

- 20 -

beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

Hurst v. State, 202 So. 3d 40, 68 (Fla. 2016) (quoting State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)), petition for cert. filed, No. 16-998 (U.S. Feb. 13, 2017).

Because the jury in this case recommended death by a vote of ten to two, "we cannot determine that the jury unanimously found that the aggravators outweighed the mitigation." Kopsho, 209 So. 3d at 570. "We can only determine that the jury did not unanimously recommend a sentence of death." Id. Therefore, because we cannot say that there is no possibility that the error did not contribute to the sentence, the error in Banks' sentencing was not harmless beyond a reasonable doubt.

Accordingly, we vacate the death sentence and remand for a new penalty phase. See Hurst, 202 So. 3d at 69.

### III. CONCLUSION

For the foregoing reasons, we affirm the denial of Banks' postconviction guilt phase claims, deny his habeas petition, vacate his death sentence, and remand for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.

- 21 -

POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision except its vacating of the death

sentence pursuant to Hurst.

CANADY and LAWSON, JJ., concur.

An Appeal from the Circuit Court in and for Duval County,
        Hugh Alfred Carithers, Jr., Judge - Case No. 162005CF015549AXXXMA
And an Original Proceeding – Habeas Corpus

Rick A. Sichta, Susanne K. Sichta, and Joe Hamrick of The Sichta Firm, LLC., Jacksonville, Florida,

        for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, and Carine L. Mitz and Robert J. Morris, III, Assistant Attorneys General, Tallahassee, Florida,

        for Appellee/Respondent