PER CURIAM.
Labrant Dennis appeals the denial of his motion to vacate his convictions of first-degree murder and sentences of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the denial of his postconviction motion and deny his habeas petition.
*688 I. BACKGROUND
The facts of this case were fully set out in this Court’s opinion on direct appeal. Dennis v. State, 817 So.2d 741 (Fla.2002). Briefly, “[o]n the morning of April 13, 1996, University of Miami football player Earl Little arrived at his on-campus apartment.” Id. at 744. When Little opened his apartment door, he discovered his roommate and teammate, Marlin Barnes, on the floor leaning against the door. Id. Marlin was badly beaten and bloody, but still breathing. Id. at 744-45. The police later found Timwanika Lumpkins also beaten, but still breathing, in a bedroom. Id. at 745. Barnes was pronounced dead at the scene, and Lumpkins was later pronounced dead at the hospital. Id. According to the medical examiner, both Barnes and Lumpkins died from massive head trauma, and both had defensive wounds to their hands. Id. at 749-50.
In the living room where Barnes was discovered, the police found wooden and metal fragments, which were later determined to be from a shotgun. Id. at 745, 749. Joseph Stewart, an acquaintance of Dennis, testified that, on April 7, he had loaned Dennis an old sawed-off shotgun, which had a wood-type grill. Id. at 747. After Dennis returned the gun to Stewart, Stewart noticed that the gun had been considerably damaged. Id. Stewart also discovered a knife and black clothing in the duffel bag containing the gun. The police recovered the shotgun and knife from the sewer drain where Stewart had disposed of them. Id. at 748. Barnes’ and Lumpkins’ wounds were consistent with having been inflicted by this shotgun. Id. at 750.
The evidence presented at trial revealed that Dennis, Lumpkins, and Barnes had been at the same club earlier that night. Id. at 746. Barnes drove to the bar in his roommate’s Ford Explorer. Id. at 748. However, after discovering that the tires had been punctured, Barnes had the truck towed back to his apartment. Id. A gas station attendant testified that someone generally matching Dennis’ description was parked at the station, which was across from where the Explorer had been parked. Id. at 746-47. The gas station attendant identified Dennis’ girlfriend’s car as the car in which the person matching Dennis’ description waited. Id. at 747. And the knife retrieved from the sewer drain was “consistent with the puncture marks on the tires of the Explorer.” Id. at 749.
The jury found Dennis guilty of two counts of first-degree murder, one count of burglary with assault or battery while armed, and one count of criminal mischief. Id. at 748, 750. At the penalty phase, Dennis’ mother and grandmothers testified regarding his positive relationships with his family and his children. Id. at 750. Following the penalty phase, the jury recommended death sentences for both murders by a vote of eleven to one. Id. The trial court followed the jury’s recommendation, finding that the aggravating circumstances [2] outweighed the mitigating circumstances.[3]
*689 On direct appeal, this Court affirmed Dennis’ convictions and death sentences.[4] Id. at 767. Thereafter, the United States Supreme Court denied Dennis’ petition for writ of certiorari. Dennis v. Florida, 537 U.S. 1051, 123 S.Ct. 604, 154 L.Ed.2d 527 (2002) (table).
In November 2003, Dennis filed a motion for postconviction relief. And on October 7, 2004, the trial judge entered an order denying all of Dennis’ claims. However, this order did not include any reasoning or findings of fact. Then, on November 15, 2004, the trial court issued an amended order. The amended order did not include findings of fact for all of Dennis’ claims. On appeal, this Court remanded to the trial court for a new proceeding on Dennis’ postconviction motion and dismissed his habeas petition without prejudice. Dennis v. State, 999 So.2d 644 (Fla.2008) (table).
Upon remand, the new trial judge allowed Dennis to file an amendment to his postconviction motion, an amendment which included two new claims. A Huff[5] hearing was held on May 11, 2009. And on June 12, 2009, without holding an evi-dentiary hearing, the trial court entered an order denying postconviction relief.
On appeal, this Court remanded the case for the trial court to hold an evidentiary hearing on two claims. Specifically, this Court ordered the trial court to conduct an evidentiary hearing on Dennis’ claims that (a) counsel was ineffective for failing to investigate and present further mitigation evidence at the penalty phase; and (b) the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the assistant state attorney’s memo to Dr. Rao, the medical examiner who testified during the penalty phase. After holding an evidentia-ry hearing, the trial court denied the claims.
Dennis appeals the trial court’s denial of postconviction relief and also petitions this Court for a writ of habeas corpus.
*690 II. POSTCONVICTION MOTION

A. Ineffective Assistance During the Guilt Phase

Dennis argues that his trial counsel provided ineffective assistance during the guilt phase for: (1) waiving his right to a speedy trial; (2) failing to adequately prepare for trial; (3) failing to object to improper opinions and bolstering; (4) failing to object to irrelevant and prejudicial evidence; (5) failing to object to improper comment on Dennis’ right to remain silent; (6) failing to investigate other suspects; and (7) failing to hire a crime scene expert. Because Dennis has failed to establish the requirements necessary for relief, we affirm the trial court’s denial.
After the United State Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court explained that for ineffective assistance of counsel claims to be successful, two prongs must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
Regarding the deficiency prong of Strickland, there is a strong presumption that trial counsel’s performance was not ineffective. Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Moreover, “[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. Further, counsel cannot be deemed ineffective for failing to make a meritless argument. Schoenwetter v. State, 46 So.3d 535, 546 (Fla.2010). Regarding the prejudice prong of Strickland, “the defendant must show that there is a reasonable probability that, ‘absent the [deficient performance], the factfinder would have [had] a reasonable doubt respecting guilt.’ ” Henry v. State, 948 So.2d 609, 617 (Fla.2006) (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052). “A reasonable probability is a ‘probability sufficient to undermine confidence in the outcome.’ ” Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination. See Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852 & 3.993, 772 So.2d 488, 491 n. 2 (Fla.2000). Thus, “[a] hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively refuted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant.” Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). “A summary or conelusory allegation is insufficient to allow the trial court to examine the specific allegations against the record.” Id.
Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence, but reviewing the trial court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004). Additionally, because a court’s *691 decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003).
1.Right to a Speedy Trial
First, Dennis claims that trial counsel was ineffective for agreeing to an early trial date or for agreeing to a defense continuance, thereby waiving Dennis’ right to a speedy trial. We uphold the trial court’s summary denial of this claim.
Dennis did not sufficiently allege either deficiency or prejudice. Specifically, given that Dennis did not allege that trial counsel could have been prepared for this capital trial involving two victims by the initial trial date or within the speedy trial period, Dennis did not sufficiently allege that trial counsel’s decisions were outside the range of reasonable professional performance. Moreover, Dennis did not include any allegations regarding how he was prejudiced by trial counsel’s decisions. He vaguely implied that there was prejudice because a continuance was not charged to the State (and Dennis was not released) as a result of the State’s failure to provide a copy of a police report that was not in existence during the speedy trial period. However, before a defendant may have a continuance charged to the State based upon a discovery violation, the defendant must demonstrate that the discovery violation prejudiced his ability to prepare for trial in a manner that could not be corrected within the speedy trial period. State v. Guzman, 697 So.2d 1263, 1264 (Fla. 3d DCA 1997). Here, Dennis did not allege that, but for the lack of access to this police report, Dennis could have been prepared for trial within the speedy trial period.
Accordingly, Dennis is not entitled to relief on this claim.
2.Failure to Adequately Prepare for Trial
Next, Dennis argues that trial counsel was ineffective for failing to secure a second chair and for representing other clients while representing Dennis. However, this claim is facially insufficient as Dennis failed to include any allegations regarding the prejudice prong of Strickland. Dennis generally claimed that trial counsel failed to adequately prepare for Dennis’ trial. But he did not include any allegation that there is a reasonable probability that, but for trial counsel’s failure to secure a second chair and his failure to represent only Dennis, the result of Dennis’ trial would have been different or that confidence in the outcome is undermined. See Ragsdale, 720 So.2d at 208 (finding that trial judge properly denied evidentia-ry hearing where defendant provided insufficient facts as to “how the outcome would have been different had counsel acted otherwise”). Moreover, the record reflects that it was Dennis’ desire that Gural-nick be his sole attorney at both phases of the trial. And counsel is not ineffective for following his client’s wishes. See Cole v. State, 841 So.2d 409, 426 (Fla.2003) (holding that counsel is not ineffective for following his client’s wish to not call his mother to testify).
Accordingly, we affirm the trial court’s summary denial of this claim.
3. Failure to Object to Improper Opinions and Bolstering
Dennis argues that trial counsel was ineffective for failing to object to several witnesses’ testimony that allegedly bolstered the testimony of other witnesses and that allegedly included improper opinions. With respect to Joseph Stewart’s testimony, Dennis contends that trial coun *692 sel was ineffective for failing to object to testimony that improperly bolstered Stewart’s own credibility. We affirm the trial court’s summary denial of this claim.
First, this claim is facially insufficient because Dennis’ postconvietion motion did not allege prejudice. See Lott v. State, 931 So.2d 807, 816 (Fla.2006) (“[W]e have repeatedly held that ‘conclusory allegations are insufficient to warrant relief on an ineffective assistance claim.”) (quoting Wright v. State, 857 So.2d 861, 877 (Fla.2008)).
Second, Dennis’ improper bolstering claim can be conclusively refuted by the record. For example, as the State accurately notes, the record demonstrates that the State was anticipatorily rehabilitating Stewart when asking him whether he had been afraid he was going to be arrested and whether he “had been told that there is anything at this point that you could be arrested for.” Anticipatory rehabilitation is an acceptable practice in Florida. See Lawhorne v. State, 500 So.2d 519, 520 (Fla.1986). Additionally, trial counsel is not ineffective for failing to object to Detective Sanchez’s testimony regarding the gas station attendant’s identification of the car because trial counsel did, in fact, object repeatedly.
Further, Dennis’ claim that Detective Romagni’s testimony improperly bolstered other witnesses’ testimony is procedurally barred because it was raised and rejected on direct appeal. See Arbelaez v. State, 775 So.2d 909, 915 (Fla.2000) (“[Defendant] may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel.”). Specifically, this Court determined on direct appeal that trial counsel’s cross-examination of Romagni opened the door to Romagni’s testimony on redirect regarding Stewart, the investigation, and Romagni’s conversations with other witnesses. Dennis, 817 So.2d at 752-53. Also, this Court concluded that even if there was error, any such error was harmless because “every point mentioned in Romagni’s testimony on redirect was properly admitted into evidence through the testimony of other witnesses.” Id. at 753.
Based solely upon the record, Dennis’ claim regarding Detective Charles’ testimony is also without merit. For instance, Charles’ testimony about the punctures in Little’s tires is simply a description of his observations of the evidence he had processed as a crime scene investigator. Thus, trial counsel was not ineffective for fading to object on this meritless basis. Trial counsel was also not ineffective for failing to raise a meritless objection to Charles’ allegedly improper expert and improper bolstering testimony about blood spatter. Charles testified that he had been trained in blood spatter analysis, and the trial court eventually ruled that Charles was an expert in blood spatter analysis.
In light of the above, we affirm the denial of this claim.
4. Admission of Irrelevant and Prejudicial Evidence
Dennis contends that trial counsel was ineffective for failing to object to testimony regarding a gun purchase, testimony regarding a cloned cell phone, and various statements during Detective Poitier’s testimony. However, we uphold the denial of this claim.
Like the above guilt phase claims of ineffectiveness, this claim is facially insufficient because Dennis’ postconviction motion did not allege prejudice. He did not explain how there is a reasonable probability that the outcome would have been different had trial counsel objected to this testimony. He did not explain how the *693 confidence in the outcome of the trial is undermined.
With regard to Watisha Wallace’s allegedly irrelevant and prejudicial testimony that she and Dennis purchased a gun in her name for Dennis, the record refutes that there was any prejudice. On cross-examination, trial counsel elicited testimony from Wallace explaining that the gun was later transferred into Dennis’ name. Moreover, during closing argument, trial counsel argued that Dennis would not have needed to borrow the shotgun used in the crimes since Dennis owned a gun.
Additionally, Dennis’ subclaim that trial counsel was ineffective for not objecting to the cloned cell phone testimony is without merit. While the testimony implied that Dennis had illegally used a cloned cell phone, the record demonstrates that this testimony was relevant to the State’s case. The State’s case included presenting evidence that Dennis made a call to a friend and, during that call, he admitted information about the murders that was not generally available. Moreover, the State’s case included evidence that Dennis had made particular phone calls to Stewart from his cell phone. Thus, this cell phone testimony was admissible. See Bryan v. State, 533 So.2d 744, 747 (Fla.1988) (evidence that defendant committed robbery using the murder weapon admissible to demonstrate that defendant possessed the murder weapon). And counsel cannot be ineffective for failing to raise a meritless objection.
Furthermore, most of Dennis’ subclaim regarding Detective Poitier’s testimony was addressed on direct appeal and is therefore procedurally barred. See Jones v. State, 949 So.2d 1021, 1033 (Fla.2006) (“Jones’ allegation of ineffective assistance of counsel is merely a variant of the issues raised on direct appeal and is therefore procedurally barred.”). During his direct appeal, Dennis argued that the State was permitted to elicit, over a defense hearsay objection, Poitier’s testimony that he had concluded Dennis committed the crimes because of his history of domestic abuse of the victim and because of Dennis’ interview with Romagni. Dennis, 817 So.2d at 753-54. He argued that this constituted inadmissible hearsay and an impermissible opinion as to Dennis’ guilt. Id. at 754. This Court held that Poitier’s testimony regarding Romagni’s interview and the domestic abuse history was harmless “as everything the detective referred to on redirect was testified in detail by other witnesses.” Id. Moreover, this Court held that Poitier’s testimony regarding Dennis’ guilt did not reach the level of fundamental error. Id. The only thing not raised on direct appeal in regard to Poitier’s testimony was Poitier’s identification of the sexual assault kit. While the sexual assault kit was irrelevant to proving the State’s case as Dennis was never accused of raping Lumpkins, it does demonstrate that the State conducted a thorough investigation, including investigating the possibility of a rape motive. And, as Dennis acknowledged in his postconviction motion, “[a]ceording to the defense, this was a case of negligent investigation.” Thus, this testimony was relevant because Dennis challenged the completeness of the police investigation, and trial counsel cannot be rendered ineffective for failing to raise a meritless issue.
Accordingly, we affirm the trial court’s summary denial of this subclaim.
5. Improper Comment on Right to Remain Silent
Dennis contends that trial counsel was ineffective for failing to object to Ro-magni’s testimony that allegedly com- *694 merited on Dennis’ right to remain silent. We disagree.
During cross-examination, trial counsel elicited testimony from Romagni tending to indicate that Dennis was completely cooperative with police. On redirect, the State attempted to demonstrate that Dennis was not entirely cooperative. Therefore, Romagni’s testimony regarding his inability to interview Dennis for a second time was relevant to Dennis’ lack of complete cooperation with police. Accordingly, trial counsel was not ineffective for failing to raise what would have been a meritless objection. See Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992), receded from on other grounds by Deren v. State, 985 So.2d 1087, 1088 (Fla.2008).
6. Failure to Investigate Other Suspects
Dennis contends that trial counsel was ineffective for failing to investigate other suspects, particularly Lumpkins’ other sexual partners, whom she referenced in her daily planner. We affirm the denial of this claim.
Like Dennis’ other ineffectiveness claims, this claim is facially insufficient. Dennis did not specifically allege what information an investigation would have revealed and what information could have been presented at trial. See Nelson v. State, 875 So.2d 579, 583 (Fla.2004) (“Under the circumstances of this case, a defendant would be required to allege what testimony defense counsel could have elicited from witnesses and how defense counsel’s failure to call, interview, or present the witnesses who would have so testified prejudiced the case.”). He also did not allege that there is a reasonable probability that the outcome of the trial would have been different had counsel investigated Lumpkins’ boyfriends and had counsel presented any evidence revealed by the investigation to the jury. He did not allege that the confidence in the outcome is undermined due to trial counsel’s failure to investigate other suspects.
Further, the record demonstrates that trial counsel did present the arguments that Dennis now contends were inadequately presented due to trial counsel’s failure to investigate other suspects. During the guilt phase, trial counsel argued that Lumpkins had other boyfriends, that Dennis had not been bothered by these other boyfriends, and that these other boyfriends might have had a motive to kill her. Specifically, trial counsel raised this issue during open arguments and during the cross-examination of Romagni. Therefore, as the trial court’s order pointed out when denying this claim, “since counsel did present this information, he was not ineffective for failing to do so.”
Accordingly, we affirm the summary denial of this claim.
7. Failure to Hire a Crime Scene Expert
Dennis argues that trial counsel was ineffective for failing to present the testimony of a crime scene expert. We affirm the denial of this claim.
As the trial court explained in its order denying relief, Dennis “fail[ed] to allege what experts should have been hired, what these experts would have testified about and how this failure prejudiced the Defendant.” See Ragsdale, 720 So.2d at 207 (explaining that conclusory allegations are insufficient to state a claim for postconviction relief). Instead, Dennis argued that evidence that this crime could not have been committed by one person and that the assailants would not have been able to leave the scene without some blood on their persons is the type of evidence that would have supported Dennis’ defense that he did not commit the crime. However, on cross-examination of State witnesses, trial *695 counsel elicited that the evidence did not establish the number of perpetrators and that whoever committed the crime may have gotten blood or other biological material on them. Thus, trial counsel, without hiring a crime scene expert, actually elicited the information Dennis’ postconviction motion mentioned.
Consequently, we affirm the denial of relief.

B. Ineffective Assistance During the Penalty Phase

Dennis contends that trial counsel was ineffective for failing to investigate and present further mitigation evidence at the penalty phase. The United States Supreme Court has stated the following with regard to claims of ineffective assistance of counsel for failing to investigate and present mitigation evidence at the penalty phase:
[O]ur principal concern in deciding whether [counsel] exercised “reasonable professional judgmen[t]” is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence ... was itself reasonable. In assessing counsel’s investigation, we must conduct an objective review of their performance, measured for “reasonableness under prevailing professional norms,” which includes a context-dependent consideration of the challenged conduct as seen “from counsel’s perspective at the time.”
Cummings-El v. State, 863 So.2d 246, 250-51 (Fla.2003) (quoting Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis and citations omitted)).
Additionally, the defendant bears the burden of demonstrating that he was prejudiced by trial counsel’s failure to investigate and present mitigation. See id. at 253. The defendant “must show that but for his counsel’s deficiency, there is a reasonable probability he would have received a different sentence. To assess that probability, we consider ‘the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the [postconviction] proceeding’ — and ‘reweig[h] it against the evidence in aggravation.’ ” Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453-54, 175 L.Ed.2d 398 (2009) (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). “A reasonable probability is a ‘probability sufficient to undermine confidence in the outcome.’ ” Henry v. State, 948 So.2d 609, 617 (Fla.2006) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Dennis did not meet his burden of demonstrating prejudice. During the eviden-tiary hearing after the second remand, Dennis presented evidence of an upbringing in poor and violent neighborhoods primarily with two different grandmothers as well as expert testimony establishing that this upbringing would have left him feeling isolated, abandoned, and desensitized to violence. However, the testimony also demonstrated that the family that raised him loved him and did not abuse him. Furthermore, while there was conflicting mental health evidence that he suffered from post-traumatic stress disorder, even the evidence supporting the presence of this disorder demonstrated that the disorder was mild and in partial remission. Thus, considering the evidence presented during the evidentiary hearing as well as the evidence presented during the penalty phase, the mitigating circumstances would not have outweighed the four aggravating circumstances present in this case, namely HAC, CCP, during the course of a burglary, and conviction of a capital felony. See Porter, 130 S.Ct. at 453-54; Breedlove v. *696 State, 692 So.2d 874, 878 (Fla.1997). Therefore, confidence in the outcome of the penalty phase is not undermined.
Accordingly, this Court affirms the denial of relief.

C. State Withheld Evidence

Dennis contends that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the assistant state attorney’s memo to Dr. Rao, which Dennis alleges improperly coached the medical examiner’s penalty phase testimony. We affirm the trial court’s denial of this claim.
Brady requires the State to disclose material information within its possession or control that is favorable to the defense. Mordenti v. State, 894 So.2d 161, 168 (Fla.2004). To establish a Brady violation, the defendant has the burden to show (1) that favorable evidence, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Way v. State, 760 So.2d 903, 910 (Fla.2000); Cardona v. State, 826 So.2d 968, 973 (Fla.2002). To meet the materiality prong, the defendant must demonstrate a reasonable probability that had the suppressed evidence been disclosed the jury would have reached a different verdict. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Way, 760 So.2d at 913; see also Striclcler, 527 U.S. at 290, 119 S.Ct. 1936.
When reviewing Brady claims, this Court gives deference to the trial court on findings of facts and reviews de novo the application of law and independently reviews the cumulative effect of the suppressed evidence. See Mordenti, 894 So.2d at 169-70; Way, 760 So.2d at 913.
Here, Dennis’ argument regarding prejudice centers upon the possibility of using the memo to impeach Dr. Rao’s penalty phase testimony, which Dennis argues was improperly inflammatory and coached in support of the HAC aggravator. However, other evidence supporting HAC would not have been affected by this impeachment. For instance, it is undisputed that both victims in this case died as a result of brutal beatings and that both sustained defensive wounds. Dr. Gulino testified to those facts. Dr. Gulino also testified that the victims remained conscious and possibly heard the attacks on each other. Earl Little testified that Barnes was alive when Little entered the apartment. Furthermore, a police officer testified that Lump-kins was alive when he arrived at the apartment.
In fact, on direct appeal, this Court upheld the trial court’s finding of the HAC aggravator based upon Dr. Gulino’s and Toby Wolson’s guilt phase testimony, not Dr. Rao’s penalty phase testimony. Specifically, this Court stated:
Both victims in this case suffered horrid injuries. The medical examiner, Dr. Gulino, testified that both victims suffered skull fractures as a result of the brutal beating they endured. Moreover, the evidence supports the trial court’s finding that the victims were conscious for at least part of the attack as they had defensive wounds to their hands and forearms. Further, the State’s blood stain pattern expert, Toby Wolson, testified that the bloodiness of the crime scene and the patterns of the blood stains strewn about the apartment supported the conclusion that Barnes got to his feet and struggled about the room after Dennis had already left. Accordingly, we find no error in the trial *697 court’s application of the HAC aggravator.
Dennis, 817 So.2d at 766. Similarly, when this Court upheld the CCP aggravator, it did not do so based upon Dr. Rao’s testimony during the penalty phase. See id. at 766 (“There is substantial evidence in the record supporting the trial court’s finding of the CCP aggravator. In addition to the record evidence recited in the trial court’s sentencing order, Stewart testified that Dennis told him, ‘Don’t worry about it. Nobody would think to come here. I just had to do what I had to do and I didn’t even go in my car.’ ”). Confidence in the outcome of the penalty phase is not undermined. As a result, Dennis cannot demonstrate the materiality prong of Brady.
Accordingly, we affirm the denial of relief.

D. Alleged Conflict of Interest

In this claim, Dennis asserts that trial counsel was operating under an actual conflict of interest due to trial counsel’s workload and that conflict adversely affected his representation of Dennis. This Court affirms the trial court’s summary denial of this claim.
In Quince v. State, 732 So.2d 1059, 1064 (Fla.1999), this Court explained the following regarding conflict of interest claims:
A conflict of interest claim emanates from the Sixth Amendment guarantee that criminal defendants have the right to effective assistance of counsel. This guarantee includes the right to representation free from conflict. See Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question of whether a defendant’s counsel labored under an actual conflict of interest that adversely affected counsel’s performance is a mixed question of law and fact. See Cuyler v. Sullivan, 446 U.S. 335, 342, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
... In certain Sixth Amendment contexts, prejudice is presumed and the claimant need not make a specific showing of prejudice. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052 (stating that actual or constructive denial of assistance of counsel and various kinds of state interference with counsel’s assistance are legally presumed to result in prejudice); United States v. Cronic, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, as to most claims of ineffective assistance of counsel based upon conflict of interest, a more limited presumption of prejudice applies. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052 (“Prejudice is presumed only if the defendant demonstrates that counsel ‘actively represented conflicting interests’ and that ‘an actual conflict of interest adversely affected his lawyer’s performance.’ ”) (quoting Cuyler, 446 U.S. at 350, 848, 100 S.Ct. 1708).
Accordingly, a defendant is required to allege that trial counsel “ ‘actively represented conflicting interests’ and that ‘an actual conflict of interest adversely affected his lawyer’s performance.’ ” Quince, 732 So.2d at 1064 (quoting Strickland, 466 U.S. at 692, 104 S.Ct. 2052 (quoting Cuyler, 446 U.S. at 350, 348, 100 S.Ct. 1708)). And this Court has explained:
A lawyer suffers from an actual conflict of interest when he or she “actively rep-resentes] conflicting interests.” Cuyler, 446 U.S. at 350 [100 S.Ct. 1708]. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. See Herring v. State, 730 So.2d 1264, 1267 (Fla.1998). A possible, speculative or merely hypothetical conflict is “insufficient to impugn a criminal conviction.” Cuyler, 446 U.S. at 350 [100 S.Ct. 1708].
*698 Bell v. State, 965 So.2d 48, 77-78 (Fla.2007) (quoting Hunter v. State, 817 So.2d 786, 791-92 (Fla.2002)) (emphasis added).
Here, instead of identifying anything specific in the record suggesting that his interests were compromised by an actual conflict, Dennis alleges that trial counsel’s “work load” related to his other clients, including clients involved in other high profile cases, adversely affected his representation. This allegation of a conflict is overly speculative and hypothetical. Dennis failed to allege that counsel actively represented conflicting interests, and we affirm the denial of relief.

E. Improper Comments & Improper Examination of Witnesses

Dennis next contends that he is entitled to relief because of the State’s allegedly improper voir dire, improper examination of witnesses, and improper comments throughout the trial. The trial court summarily denied this claim, concluding that portions of it were raised or should have been raised on direct appeal, that the voir dire questions were appropriate, and that wide latitude is permitted during closing arguments.
We affirm the trial court’s denial because this claim is procedurally barred. Dennis’ claims regarding improper voir dire, improper comments during closing arguments, and improper examination of witnesses should have been raised on direct appeal. See Robinson v. State, 707 So.2d 688, 697-99 (Fla.1998). And Dennis’ specific argument about the evidence of abuse and violence between Lumpkins and Dennis is procedurally barred because the issue was decided on direct appeal. Specifically, this Court determined that this evidence was admissible because “[although certainly prejudicial, the evidence of the nature of Dennis’s relationship with the victim was relevant to establish Dennis’s motive.” Dennis, 817 So.2d at 762. To any extent that Dennis may now be claiming that trial counsel was ineffective for failing to object to the State’s conduct, the claim is facially insufficient as Dennis’ postconviction motion contains only conclu-sory allegations regarding ineffectiveness. See Gordon v. State, 863 So.2d 1215, 1218 (Fla.2003) (“A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.” (quoting Kennedy v. State, 547 So.2d 912, 918 (Fla.1989))). Therefore, the trial court’s summary denial of this claim was proper.

F.Interviewing Jurors

Dennis further claims that Florida Bar Rule of Professional Conduct 4-3.5(d)(4) is unconstitutional and that an individual should be appointed to assist him in interviewing jurors to establish juror bias. However, this claim is procedurally barred as it should have been raised on direct appeal. See Israel v. State, 985 So.2d 510, 522 (Fla.2008) (concluding that juror interview claim was procedurally barred because it was not raised on direct appeal). Moreover, “this Court has consistently rejected constitutional challenges to rule 4-3.5(d)(4).” Id. at 522-23 (citing Barnhill v. State, 971 So.2d 106, 117 (Fla.2007); Power v. State, 886 So.2d 952, 957 (Fla.2004); Johnson v. State, 804 So.2d 1218 (Fla.2001)). Accordingly, this Court affirms the denial of this claim.

G.Records Requests

Dennis argues that the trial court erred in denying several of his requests for additional public records. In reviewing a trial court’s denial of public records requests, this Court applies an abuse of discretion standard. Hill v. State, 921 So.2d 579, 584 (Fla.2006).
*699 All but one of the requests at issue were made pursuant to Florida Rule of Criminal Procedure 3.852(g). The scope of requests made pursuant to rule 3.852(g) is governed by rule 3.852(Z), which provides that the records must not be “privileged or immune from production” and that the records are “either relevant to the subject matter of the proceeding” or “reasonably calculated to lead to the discovery of admissible evidence.” If an agency files an objection to the written demand for additional public records, the trial court must hold a hearing and order the agency to produce the records if the court determines that each of the following exists:
(A) Collateral counsel has made a timely and diligent search as provided in this rule.
(B) Collateral counsel’s written demand identifies, with specificity, those additional public records that are not at the records repository.
(C) The additional public records sought are relevant to the subject matter of a proceeding under rule 3.851, or appear reasonably calculated to lead to the discovery of admissible evidence.
(D) The additional public records request is not overly broad or unduly burdensome.
Fla. R.Crim. P. 3.852(g)(3).
First, the trial court did not abuse its discretion in denying Dennis’ request to the Miami-Dade Police Department for “any and all documentation” regarding Criminalists Quirk’s and Wolson’s past casework. These particular criminalists had worked for the department for decades. In that time, they had participated in countless cases. Thus, this request for all documentation related to their past casework was unduly burdensome. Moreover, this request appears to have been a fishing expedition, and “this Court has held that the production of public records is not intended to be a ‘procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief.’ ” Diaz v. State, 945 So.2d 1136, 1150 (Fla.2006) (quoting Sims v. State, 753 So.2d 66, 70 (Fla.2000)).
Second, the trial court did not abuse its discretion in denying Dennis’ request for the personnel file of Assistant State Attorney Flora Seff. During the hearing on this request, Dennis stated that he sought the file in order to discover any documents related to the original trial judge’s recusal in this case due to an ex parte conversation with Michael Von Zamft, another state attorney. This request was simply an improper fishing expedition.
Third, the trial court did not abuse its discretion in denying the request for the personnel records of all fourteen officers of the Coral Gables Police Department that documented their presence at the crime scene. The trial court ordered the production of the personnel files of those officers who had substantive roles at the crime scene. Dennis’ request for the other officers’ files was nothing more than a fishing expedition. Additionally, it is unlikely that any complaints of misconduct in the other officers’ personnel files would have been helpful to Dennis’ case because nothing at the crime scene directly implicated Dennis.
Fourth, relief is not warranted on Dennis’ subclaim involving his requests to the Departments of Corrections and Health. Dennis appears to be arguing that he was entitled to be present during the trial court’s in camera review and that he was entitled to a more detailed order so that he could object to any claimed exemptions (or any claims of confidential materials) with which he disagreed. However, the record demonstrates that Dennis was *700 aware of the specific exemptions that both departments were claiming. Thus, Dennis was not prevented from objecting to those claims of exemptions and confidential materials. Accordingly, this subclaim is without merit.
Finally, the trial judge did not abuse its discretion in denying Dennis’ request to various agencies for records regarding Florida’s lethal injection protocol. In Tompkins v. State, 994 So.2d 1072, 1090 (Fla.2008), this Court denied relief on the defendant’s claim “that the trial court erred in summarily denying his claim that he was deprived of his rights under chapter 119, Florida Statutes, and Florida Rule of Criminal Procedure 3.852, when the trial court granted the objections of FDLE and DOC to his public records requests.” This Court concluded that the records requested were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Tompkins, 994 So.2d at 1090; see also Walton v. State, 3 So.3d 1000, 1013-14 (Fla.2009). This Court explained that it “has repeatedly upheld summary denial of challenges to Florida’s lethal injection procedure.” Tompkins, 994 So.2d at 1090 (citing Power, 992 So.2d at 223; Sexton v. State, 997 So.2d 1073, 1089 (Fla.2008); Henyard v. State, 992 So.2d 120, 132 (Fla.2008)).
Therefore, the trial court did not abuse its discretion in denying Dennis’ requests for additional public records.

H. National Academy of Sciences Report

In an amendment to his postconviction motion upon this Court’s first remand, Dennis asserts that his convictions and sentences are unreliable due to newly discovered evidence that the forensic science used to convict and sentence him was neither reliable nor valid. His claim is based upon a 2009 report by the National Academy of Sciences regarding the field of forensic science.[6] However, in Johnston v. State, 27 So.3d 11, 20-21 (Fla.2010), this Court concluded that the report cited by Dennis does not constitute newly discovered evidence. Accordingly, the trial court properly denied relief.

I.Lethal Injection

Dennis argues that he is entitled to an evidentiary hearing on his claims that Florida’s lethal injection statute and procedure are unconstitutional. However, this Court has repeatedly affirmed summary denials of constitutional challenges to Florida’s lethal injection protocol. See Tompkins, 994 So.2d at 1080-82; Power, 992 So.2d 218; Henyard, 992 So.2d at 131-32; see also Valle v. State, 70 So.3d 530, 546 (Fla.2011), cert. denied, — U.S. -, 132 S.Ct. 1, 180 L.Ed.2d 940 (2011); Lightbourne v. McCollum, 969 So.2d 326, 353 (Fla.2007); Schwab v. State, 969 So.2d 318, 325 (Fla.2007). Therefore, we affirm the summary denial of Dennis’ lethal injection claims.

J.Sufficiency of the Evidence

Dennis’ claim that there is insufficient evidence to support his convictions for first-degree murder is procedurally barred as this Court decided the issue on direct appeal. Specifically, this Court stated, “Lastly, although not raised by Dennis, we have independently reviewed the evidence and find it sufficient to support the convictions.” Dennis, 817 So.2d at 767. Accordingly, the trial court’s summary denial of this claim was proper.
*701 III. HABEAS PETITION

A. Failure to Raise Claims Regarding Improper Testimong

In his habeas petition, Dennis argues that his appellate counsel on direct appeal provided ineffective assistance by failing to raise claims regarding allegedly inflammatory and improper testimony. However, Dennis is not entitled to relief.
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of appellate counsel, this Court must determine:
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660-61 (Fla.2000).
“If a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.” Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). “In fact, appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue.” Valle v. Moore, 837 So.2d 905, 908 (Fla.2002) (citing Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990)).
The first portion of Dennis’ claim concerns testimony that trial counsel objected to, namely testimony from Lump-kins’ aunt regarding Dennis having a gun, testimony from Detective Hudak regarding the reactions of Barnes’ teammates to the murders, and testimony from Dr. Guli-no regarding smeared blood near the door demonstrating that Barnes was blinded and reaching for the door. “With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first.” Valle, 837 So.2d at 910 (quoting Jones v. Moore, 794 So.2d 579, 583 (Fla.2001)).
Here, even if the admission of this testimony was erroneous, Dennis cannot demonstrate prejudice because any error was harmless. See id. (“If that error was harmless, the petitioner ... would not have been prejudiced.” (quoting Jones, 794 So.2d at 584)). The State’s blood pattern expert testified “that the pooling and smearing of blood near the front door of the apartment and other nearby patterns were consistent with Barnes struggling and flailing about.” Dennis, 817 So.2d at 749. Furthermore, multiple witnesses testified that Dennis possessed a gun. In fact, Stewart testified that he had loaned Dennis a sawed-off shotgun, a gun that was consistent with having been used to inflict the victims’ wounds. Stewart, who led the police to the gun, testified that the gun was damaged when Dennis returned it. And the State’s expert “testified that the metal fragments recovered from Barnes’ apartment conclusively matched the trigger guard of the recovered shot *702 gun.” Id. at 749. There was also testimony that, a month prior to the murders, Dennis visited a Mend on the University of Miami campus and asked that friend where Barnes lived, explaining that “he wanted the information because he wanted to find out if [Barnes] was ‘f — ing around with his baby’s mother.’ ” Id. at 748. Therefore, we conclude beyond a reasonable doubt that the admission of the allegedly improper testimony to which trial counsel objected did not affect the jury’s verdict.
The next portion of Dennis’ ineffectiveness of appellate counsel claim relates to allegedly improper testimony that trial counsel did not object to, namely a paramedic’s testimony that the crime scene was bloody, a detective’s testimony that the skull of one of the victims was “mushy,” Dr. Gulino’s testimony that the victim’s head injuries were consistent with being hit with the blunt side of the shotgun, and Coach Shannon’s testimony that he called Ray Lewis in Lakeland the morning of the murders.[7] If a claim “was not preserved at trial by objection, appellate counsel cannot be ineffective for failing to raise this claim on appeal unless the claim constituted fundamental error.’ ” Valle, 837 So.2d at 909. “Fundamental error is error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’” Jones, 949 So.2d at 1037 (Fla.2006) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
We conclude that this portion of Dennis claim does not rise to the level of fundamental error. Several witnesses testified that the crime scene was bloody, including the States blood pattern expert. See Dennis, 817 So.2d at 749. Moreover, Dr. Guli-no, the medical examiner, properly testified about the gruesome injuries to the victims head. See id. at 749-50. Furthermore, the trial court did not abuse its discretion in allowing Dr. Gulino to testify about the consistency between the wounds and the shotgun. See Cox v. State, 966 So.2d 337, 352-54 (Fla.2007). Even if this had been an abuse of discretion, it would not be fundamental error because, as this Court explained on direct appeal, “the State introduced several composite pictures comparing the victims wounds with the shotgun that made it readily apparent that the victims were struck with such force that their skin retained what amounted to the shotguns ‘fingerprints.’ ” Dennis, 817 So.2d at 750.
Accordingly, this Court denies relief on this claim.

B. Failure to Raise Claims Regarding Juror Interactions & Judicial Bias

Dennis claims that appellate counsel was ineffective for failing to claim fundamental error based upon alleged juror misconduct and alleged judicial bias. However, no relief is warranted.
Dennis has not pointed to anything in the record that indicates that potentially prejudicial juror misconduct occurred. See Morris v. State, 811 So.2d 661, 667 (Fla.2002) (“[P]otentially harmful misconduct is presumptively prejudicial, but the defendant has the initial burden of establishing a prima facie case that the conduct is potentially prejudicial.”) (quoting Amazon v. State, 487 So.2d 8, 11 (Fla.1986)). Instead, Dennis petition expresses hypo *703 thetical arguments about (1) what could have happened in addressing Juror Reids scheduling problem, (2) why the State may have asked whether Juror Thomas was fired, and (8) why jurors may have asked to be escorted to their cars. Such speculation would not provide a basis for this Court to conclude that the trial court abused its discretion in failing to adequately inquire about the alleged misconduct. Cf. Kelley v. State, 569 So.2d 754, 761-62 (Fla.1990) (relinquishing jurisdiction for trial court to interview jurors based upon a specific report from attorneys that one juror informed the attorneys of certain misconduct on the part of another juror during trial). Therefore, such speculation does not provide this Court with a basis to conclude that fundamental error occurred.
Next, Dennis asserts that judicial bias is evidenced by adverse rulings, an alleged ex parte communication with the jury, and a friendship with Dr. Rao. However, none of these allegations rises to the level of fundamental error. As this Court has explained, adverse trial court rulings do not generally provide a legally sufficient basis for disqualification. Waterhouse v. State, 792 So.2d 1176, 1194 (Fla.2001). Additionally, when viewed in context, it is clear that the record does not support Dennis’ claim that an ex parte conversation regarding the jury instructions occurred. Furthermore, Dennis’ allegation regarding the judge’s friendship with Dr. Rao is based upon information disclosed at an evidentiary hearing that took place during the first proceeding on Dennis’ post-conviction motion. It is not based upon the appellate record. See Rutherford, 774 So.2d at 646.
Accordingly, appellate counsel was not ineffective for failing to present these alleged instances of fundamental error, and Dennis is not entitled to relief.

C. Admissibility, of Dr. Rao’s Testimony

Next, Dennis contends that the admission of Dr. Rao’s testimony during the penalty phase violated his confrontation rights under the United States Supreme Court’s decisions in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), because her testimony was based upon a report written by a medical examiner whom she supervised. However, Crawford does not apply retroactively, and by extension neither does its progeny, Melendez-Diaz. See Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007); Chandler v. Crosby, 916 So.2d 728 (Fla.2005). Accordingly, this claim is without merit.

D. Dennis’Absence from Pretrial Hearings

Dennis contends that his constitutional right to be present during pretrial hearings was violated. As this Court has explained,
[a] defendant has a constitutional right to be present at all “crucial stages of his trial where his absence might frustrate the fairness of the proceedings.” Garcia v. State, 492 So.2d 360 (Fla.1986). However, the right “does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed.” United States v. Vasquez, 732 F.2d 846, 848 (11th Cir.1984); see also Rutherford v. Moore, 774 So.2d 637 (Fla.2000); Cole v. State, 701 So.2d 845 (Fla.1997) (finding that the constitutional right to be present does not extend to conferences involving *704 purely legal matters because the defendant’s presence would be of no assistance to counsel).
Orme v. State, 896 So.2d 725, 738 (Fla.2005).
However, Dennis is not entitled to relief. First and foremost, this claim is procedurally barred because it was not raised on direct appeal. See Morris v. State, 931 So.2d 821, 832 n. 12 (Fla.2006); Phillips v. State, 894 So.2d 28, 35 n. 6 (Fla.2004). Second, Dennis has failed to point to anything discussed during the pretrial hearings that required his consultation. In other words, he has failed to demonstrate that his absence during these pretrial hearings frustrated the fairness of the proceedings.
Accordingly, we deny relief.[8]
IY. CONCLUSION
For the foregoing reasons, we affirm the denial of Dennis’ postconviction motion and deny his habeas petition.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. The trial judge found four aggravating circumstances: "(1) that the defendant had been convicted of a prior capital felony (the contemporaneous murder); (2) that the murder was committed in the course of a felony (burglary); (3) that the murder was especially heinous, atrocious, or cruel (HAC); and (4) that the murder was committed in a cold, calculated, and premeditated manner without any pretense of legal or moral justification (CCP).” Dennis, 817 So.2d at 750.

. “The [trial] court considered the following statutory and nonstatutory mitigation: (1) that the defendant did not have a significant history of prior criminal activity (not found and therefore given no weight); (2) that the defendant was under the influence of extreme *689 mental or emotional disturbance (given little weight); (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (given no weight); (4) a catchall category of mitigation — the defendant's kindness to others and love and affection towards his family (given some weight); (5) that defendant's demeanor at trial was good (given some weight); (6) the length of sentence defendant could receive if not sentenced to death (found not to be mitigating and therefore given no weight); and (7) lingering or residual doubt as to defendant’s guilt (found not to be mitigating and therefore given no weight)." Id.

. On direct appeal, Dennis argued that: (1) the trial court failed to provide the jury with a cautionary instruction on accomplices; (2) the State improperly bolstered the credibility of several of its witnesses; (3) the State improperly impeached its own witness, Watisha Wallace; (4) the trial court erred in denying a motion to suppress the identification of the car; (5) the trial court erred in allowing the State to impeach its own witness, Jessie Pitts; (6) the trial court erred in admitting collateral evidence that Dennis stalked, threatened, and assaulted Lumpkins; (7) the trial court erred in allowing the State to introduce evidence that Dennis had a jealous character; (8) the trial court erred in admitting several autopsy photographs; (9) the sentencing order provided an inadequate basis for review in that it contained several factual inaccuracies; (10) the trial court erred in finding the CCP aggra-vator; (11) the trial court erred in finding the HAC aggravator; (12) the trial court erred in giving little or no weight to the extreme mental or emotional disturbance mitigator; and (13) the death sentence is not proportionate because this was a crime of passion. See id. at 750-67.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. Nat'l Research Council, Strengthening Forensic Science in the United States: A Path Forward (2009).

. Dennis’ allegations regarding Dr. Rao's testimony, Detective Charles’ testimony, and other portions of Dr. Gulino’s testimony are simply variations of claims raised in his post-conviction motion. ’’[C]laims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postcon-viction motion.” Rutherford, 774 So.2d at 643.

. Dennis' habeas petition also argues that there was insufficient evidence to prosecute, convict, and sentence Dennis. However, this habeas claim is simply a variation of the post-conviction sufficiency claim discussed above. And as explained above, this Court determined on direct appeal that the evidence was sufficient. See Dennis, 817 So.2d at 767. Accordingly, Dennis is not entitled to relief.